v. Virginia Department of Transportation, VDOT. Mr. Martingale, it's good to have you here, sir. Thank you, sir. May I proceed? Thank you. May it please the Court, my name is Kevin Martingale. I represent the appellants in this matter. This is a matter that involves free speech issues at the 41 Welcome Centers and Rest Areas in the Commonwealth of Virginia. Forty of those locations are off interstates. Are they all open now, or do you still have some of them closed? I believe they're all open now. But according to the exhibits that were attached to the complaint, there are 41 of them. And one of them is located on Route 13 in Acomack County. The rest of them are off of interstates. And those are the ones that we know to be open. Would it be possible for you to sort of briefly, in the context of your complaint, identify your causes of action? What's the specific constitutional hook for the various allegations in your complaint? Because your complaint isn't really separated by counts. It is not. So we... So, for example, what's your equal protection claim, for example? That they're not treated equally and there are no standards that are announced in these regulations. Who is treated equally with whom? That the appellants do not have any standards to guide their behavior and that there is absolute discretion lodged in a single governmental entity. And in this case, actually a single governmental official with no appeal mechanisms whatsoever. That sounds more like due process. It is primarily a due process argument. And that's what we focus most of our attention on, is due process. Well... And as well as free speech. Are you abandoning your equal protection claim? Well, candidly, Your Honor, I've always had a difficult time separating equal protection and due process. We think that there are components of both involved in this. So I wouldn't want to abandon it, but I'll readily concede that we view this as primarily a free speech and due process case. The free speech aspect has to do with content restrictions and regulations. Due process primarily with vesting unbridled discretion in a single governmental official with no apparent review mechanisms, appeal mechanisms, or any way to deal with that discretion that is exercised without any guiding standards. But you're not pegging any of your factual allegations to an equal protection argument that I can see? I think that's probably correct. Okay. If I may proceed, this matter was dismissed in the United States District Court on a 12B6 motion. And the opinion rendered by the Honorable Robert G. Dumar essentially said three things. One, that we did not allege sufficient facts to establish standing. Secondly, that all of the speech that occurs at these rest areas is government speech. And three, that although we have standing to object to the fees because they're being paid under protest, the fact that this is government speech means we cannot prevail on our objection to the fees that we have considered to be unreasonable. I'll first like to address the standing issue. And I would respectfully contend that the most applicable case is the Clatterbuck decision. And the reason I raise Clatterbuck is that in that case, it was expressly pointed out that the individuals who were appealing, who objected to restrictions on soliciting or begging, were found to have failed to have pled that they begged in the past, wished to beg. Excuse me, but I understood that the District Court, and perhaps correct me if I'm wrong, but as I recollect, the District Court found that you had standing with respect to fees. With respect to fees. Right, so is that where, once you get past standing, were you citing Clatterbuck for the standing argument? We were citing Clatterbuck for the standing argument in the context of objecting to the speech restrictions. You had said you were talking about fees. Right. So can we stay with fees? Yes. What's your argument with respect to fees since the District Court found that you had standing? Our argument with respect to fees is that the basis for the dismissal of the fee argument was premised on the conclusion that this is government speech. And so what the Court ruled is that because it's government speech, we no longer have the ability to object to the imposition of the fee scheme. That I thought was the basis for the, that's the First Amendment claim, I thought. Well, if you read. Can we just stay with, part of my problem here is trying to figure out what facts you're arguing to support what claims. So it would just help me tremendously if we could stay with fees for one minute. Yes, Your Honor. And you have standing? Yes, Your Honor, on the fees. Yes. So what's your argument on the fees given the fact that the Court found that you have standing? Do you have any, do you have any precedent for the proposition that fees, that the fees violate the amendment because they are content-based? What exactly is your argument with respect to fees? We did cite authorities standing for the proposition that the use of fees that either are designed to restrict speech or that excessively burden speech are unconstitutional. We don't know at this point, based on this record, what the justification for the fees in terms of the amount might be. There's nothing that has been explained. We have alleged that the fees are excessive, that they go well beyond mere administrative expenses and that they're causing damages, that they are a problem to my clients because they're excessive in nature. As of the filing of the First Amendment complaint, over $80,000 worth of fees had been paid. At the same time that the ability to restrict, the ability to solicit advertising has been cut down because there are fewer opportunities to solicit various kinds of customers and messages and so forth to be able to publish those. So on the one hand, you're paying fees, which raises your expenses, and on the other hand, you have a much more restricted group from which you might be able to solicit. But you started out by saying the fees were excessive, and I'm trying to understand excessive with respect to what? Is it that you're saying that they're content-based fees? I'm trying to get to the crux of your argument with respect to fees. We take the position that the fees are unreasonable and unjustifiable because they have a chilling effect or they have a suppressing effect on free speech. And I'll give you a concrete example. Here's a concrete example. USA Today, as cited in this record, made the decision to withdraw all of its racks because it didn't want to pay the fees. So there is one loss to the public based on the imposition of these fees. We have soldiered on paying these fees. It is a tremendous burden. But for now, my clients made the decision to pay the fees. But they came to court complaining these fees are excessive. They can't be justified. Instead of allowing us to present evidence to show that they're excessive and the burden that it's placing on my clients, the court simply dismissed that argument out of hand. And if you read the summary of the reasoning, the judge ties that back to the conclusion that he believes it's all government speech. So that's why I'm sorry that it feels a little circular, but that's what the opinion does. The opinion says you don't have standing on the free speech issue because it's government speech and you didn't allege particularized harm. Also, he's saying that the claim of self-censorship isn't objectively reasonable because you never sought advice and you haven't solicited any kind of guidance regarding what you can do and what you can't do. I think that was a big part of his analysis, wasn't it? It was. Why is that incorrect? I would go straight to the Cooksey opinion at page 238 where it explains that a risk of injury to reputation is enough to support a claim to go forward with a First Amendment case. That's in footnote 5 on page 238 of Cooksey. But what is the risk of injury to your reputation? Here's the issue. The risk is if my client goes to various customers, whether they're businesses or individuals, and solicits their business, takes their money, produces an ad or something along those lines, and then doesn't deliver it, it's either put out for a short period of time and then pulled out by the Virginia Tourism Commission or something else happens along those lines. There is not only a reputational damage, there's a contract damage. My clients could be sued for fraud. It might be in violation of the Virginia Consumer Protection Act because they have solicited something knowing that it's not allowed according to the policies that are in place at these rest areas. And there are no mechanisms for a preview. But even more problematic, let's suppose that you were to conclude that we should go seek a preview. The exact language of this says that the policies are subject to, if you look at page 83 of the joint appendix, it says that Virginia Tourism Commission remains a controlling authority at all times and all of the policies may change at any time without prior notification as VTC deems necessary. Which means even if we had permission from a single official to do something, we solicited it, we involved these people, we took their money, we produced the product, we put it out, somebody else could come along and say, yeah, we've changed our mind, pull it. We don't want Regent University Advertiser anymore. We don't want Christian Broadcast Network. We don't want political ads. We don't want that real estate guy. There could be any number of changes made at any time. There are no due process mechanisms. There's nothing that binds the Virginia Tourism Commission at all. And if we're not the, I would submit to you that based on this record, we're not only a party withstanding, we're the ideal party. Because no other single entity or potential customer out there has any real incentive to come complain about this and seek review. The only dismissal for rightness was your as-applied challenge. Correct? As I interpreted the order and the opinion, the opinion said that we had not raised sufficient facts or threat of injury for any kind of challenge, facial or as-applied. It was an outright dismissal. Part of the problem is that your complaint doesn't attach facts to causes of action, so it's hard to, it's not always easy to connect the dots. But as I read it, the rightness dismissal went to your as-applied challenge. And as to the facial as well? Because the court declared that we did not have I was only speaking to rightness. Which is the not seeking not having received any indication that you couldn't proceed. And the problem that we have with the judge's analysis on that is that there's no mechanism or path for us to follow. There's nothing that is set out in any of the regulations or the policies that articulates how you're supposed to do this. To whom do you go? When do you go? What is the review mechanism? What's the criteria that is used for that? Is there a post-decision review? You have to try to do something. I think what Judge Dumas was saying, you really can't claim self-censorship unless you try. You cite Cooksey, and Cooksey was so different in this case. Because in that case, the North Carolina board was after this guy. Because he was trying to provide nutrition advice, wasn't he? They were redlining his arguably a big brother type situation. He was really in the gun sights. We don't have anything like this. It seems to me a situation where you're saying you're concerned but you haven't done anything to try to alleviate your concerns. Why is this even remotely a Cooksey situation? I would submit two things. One is that under So the damage was not going to involve potentially getting sued if you will, for soliciting anything and then publishing something and having it pulled. Cooksey actually had less standing I would argue than we have. But in this case, we actually already had some interaction. I think your better argument might be he has a different kind of standing. Well, he does. But how can you say that somebody who's been redlined by the government in his content has less standing? Well, the only thing that Cooksey had was his time invested. He's being told you need to be careful what you put out there and we're going to redline that for you. In our case, there's no mechanism for this but I guess what they're saying we should do is we should run around and try to get business from people but tell all of the potential customers we're going to have to get this checked out to see if it's allowed so now we're going to create this and then we're going to give it to the government and get it checked. Nobody's told you you can't do anything. I'm just being the advocate on the other side here. Nobody's told you you can't do anything. So why is this a reasonable concern? The fear of self-censorship and the fear of danger and all that doesn't have to be reasonably, objectively reasonable. I would submit two things. One is that under Clatterbuck in particular if you look at what was talked about with the allegations there the allegations were deemed sufficient for finding and standing and in that case they did not plead that they begged in the past were going to beg in the future or that they had anything to do with the buffer zones and yet the court found that they had standing. Under that analysis, I believe we do but we've also already had some interaction with the government on this and the interaction was that there was a protest about the fees and what they were told is, yeah, well, you pay the fees or we pull all of your materials. And so that then led the clients to come to me. We did a Freedom of Information Act request. We got in all the rules and started realizing the extent to which all these restrictions are involved. Realized at that point, you've got a problem. Number one, there's no mechanism to protest the fees. Number two, there's no stated mechanism to get anything previewed or approved in advance. And even if you do get it approved, it can be changed at any time. So even if we go seeking the relief of preclearance, if you will it can be changed at any time. According to their own language, their own policy and it can be pulled and at that point, we've got a major problem. We could be sued. But nobody has a right to have the law and regulations stay the same. I mean, unless you have a site plan and a zoning case or something unless you have a governmental act, a significant governmental act that's approved your conduct, you don't have a right to have the law not change or policy not change. I see that I'm out of time. I agree that you don't have the ability to be protected from the law changing, but what they're saying in their own policy is that these are the rules today and we can change the rules at any point without any prior notice. That is a denial of due process. That's the problem. Their own language is too strong for their own good. Thank you. If I may have the rest for rebuttal. Thank you, sir. Mr. Cox. Yes, sir. Good to have you here, sir. Thank you. May it please the Court, Trevor Cox from the Attorney General's Office for the Appellees. This case is about whether the government may retain control over its message of tourism that it promotes through the brochure racks at the 41 rest stops and welcome centers that VDOT operates throughout the Commonwealth. Are you conceding standing? Your Honor, I think they're standing with regard to fees. He has alleged. Yes, as did the District Court. Yes, and I think that he's alleged that because of the fees that are imposed to place materials, it cuts into his profits, and he alleges that he has paid $80,000. So we think that he's adequately alleged standing as to challenge the fees. Right. I'm sorry. What about the other? There are a plethora of other challenges sort of mushed together here. So you're just conceding standing on fees? That's correct. And are you conceding standing on the other, the assorted other challenges? Well, as to the challenge to the content restrictions, we do not concede standing for the reasons. Can you tell me why not? Well, you can't concede standing anyway. Can you? It's a jurisdictional inquiry. You're not arguing it. Correct. I'm not arguing it. That's a better way of putting it. We don't believe that they have standing to challenge the content restrictions because for some of the reasons that the RNOs have suggested, there hasn't been any kind of threat of prosecution. There's been no enforcement action that's taken against them. What about Mr. Martingale's argument, though, that this is different from Cooksey because you don't just have one individual and the government. You've got a situation where he's dealing with many third parties, his business, his client is dealing with many, many third parties, and his reputation is at issue in a way that wasn't at issue in Cooksey. Why doesn't that give him an objectively reasonable concern regarding censorship that perhaps the plaintiff in Cooksey did not have? Well, we agree that Cooksey is a very different case because of the threat of prosecution there, because of the interaction with the government agency saying, you've got to take this down and this is unacceptable. As to the threat to reputation, we think that's a very attenuated injury, and it doesn't suffice to be an injury in fact. He's saying that if there's an ad that if he can solicit from somebody and if it's placed and if there's an adverse action, then maybe there's an injury. But we don't have any kind of specific, there's no facts in the complaint about exactly what he would want to place, that there would be somebody willing to place it, that there would be an enforcement action. And so we think it's very, very attenuated. So it's very different from Cooksey and also from Potterbrook because of the threat of criminal prosecution that was at issue there. So we don't think that there's an objectively reasonable chilling effect, and the district court was correct about that, because all he has alleged is that there are known and unknown consequences of being found in violation of the rules. I don't understand why you think it's significant that in Potterbrook there was a threat of criminal prosecution, that if they do risk running afoul of the law, does it matter whether that takes the form of criminal enforcement action or a fine or any other kind of penalty? Why does that matter for a standing analysis? Why isn't it enough that they used to be able to display these pamphlets for free and now they can't? Well, I think the threat of criminal prosecution is taken more seriously than a contract agreement about whether or not you comply with the contract. But for standing purposes, why does it make a difference? Why does the negative effect have to take the form of something, as you say, as serious as threat of criminal prosecution? Why does it make any difference? I guess I'd answer it in this way. In Clatterbuck you had plaintiffs who wanted to beg on the downtown mall. I remember Clatterbuck very well. Yeah, I'm well aware of that, Your Honor. And if they solicited in those areas, they would be criminally prosecuted and there was a threat of that. Here, we don't know what plaintiffs want, what they want to do. They've said that they – Is there at least a threat of sanction if they fail to comply? All they have alleged, Your Honor, is that they might be in violation of 24 BAC 305010L. And that doesn't carry any threat of sanction? I think there's a $500 to $100 fee. Is there no kind of fine? Is there no negative consequence to failure to comply? There is a $500 to $100 fee fine attached to that. But that is a regulation that prohibits very loud language and not of the kind that – it's not the contractual language that's at issue here. That's the only threat. Are you talking about the insulting and boisterous and offensive language? Yes, Your Honor. Okay. And that's, as the district court said, that's the only threat that was alleged here. But I'm not sure you've answered Judge Duncan's question, though. No, I haven't. Yeah? For purposes of standing, threshold inquiry, what difference does it make? As long as there is the threat of sanction, as there was in Clatterbuck and there is here, why does it matter? Why does the distinction – how does your distinction or your attempted distinction of Clatterbuck matter? Well, as Mr. Martingale said, he's not sure what the threat is. It doesn't matter. Or why does it matter? There is a threat of a sanction, a fine. You've acknowledged that yourself. I would acknowledge that that's his allegation, that he said that he could be prosecuted under that. But that's not a reasonable thing. Is that a standing inquiry? I think it goes to whether there is a threat of prosecution or whether he has alleged an objectively reasonable chilling effect that would affect his behavior. But I think that even if there's standing, I mean, the tourism program here is clearly government speech, and the district court was correct to find that, consistent with Sumum and Walker, that this was government speech. So let me run through those factors. First, the state has used the speech to convey a government message. It's undisputed that VDOT oversees the information that's distributed at the areas to promote its message of tourism and travel safety. And appellants themselves acknowledge in the complaint that that's what VDOT does. They say at paragraph 11 of the First Amendment complaint at JA 172 that the rest areas have historically existed for dissemination of information and promotion of tourism. And there are statutes in the Virginia Code that authorize VDOT to distribute information that is, quote, for the purpose of informing the public of places of interest within the commonwealth and to establish information centers that provide such information as the commonwealth may consider desirable. So the first factor that the Supreme Court has adopted is clearly met. Second, the tourism program is closely identified in the public mind with Virginia. As the Supreme Court explained in Summum, the public will naturally identify the materials with the government unit that owns the land. So an advertisement for King's Dominion, the casual tourist will automatically decide that that's a message from the state of Virginia? I think in the context of the brochure racks, when it's placed alongside government-issued maps and information, the whole program of tourism is government speech because it satisfies those factors. Just to repeat myself, the Supreme Court said that the public's naturally going to identify the message with the government unit that owns the land, which is here, the commonwealth. So it's not surprising that somebody visiting a Virginia rest area or welcome center that's located on Virginia property and that distributes information about Virginia locations alongside government-issued maps would identify it with the government of Virginia. And then finally, to go to the third factor, the state exercises editorial control over the speech. I don't think that's disputed either. That seems to be the entire problem end of the case, that they exercise too much editorial control. And again, that's consistent with the statutes I mentioned. It's 33.2, 1200, and 33.2, 1217d, that authorize VDOT to inform the public of places of interest within the commonwealth and provide such other information as the commonwealth may consider desirable. Don't give all that away? Is it all given away to the public? It is, Your Honor.  They're free materials to the public. And I want to approach the King's Dominion. It's given to me. I mean, it's free to me. That's right. And how about the map? Is it free to me? Yes. Yes. I believe there are some gift shops in some of the larger welcome centers. There might be places that sell products. Certainly the vending machines there are sold, but the brochures at issue here are free, and I don't think there's any dispute about that. So appellants take issue with the government's choice to focus on the tourism, but the Supreme Court has repeatedly said that it's perfectly valid for the government to choose what it says. And the fact that the government edits or can control it makes it government speech? That's one of the factors, one of the three factors. The editorial authority that is exercised. Now, the Supreme Court said in Sumum that the fact that there's final approval authority by the government is sufficient. So it doesn't necessarily have to be very active editorial authority. You certainly didn't see that in Sumum where a monument was presented and the government could choose whether or not to accept it. So appellants take issue with the fact that the government wants to focus its message on tourism. They want to be able to put all sorts of other kinds of advertisements out there, political advertisements and religious advertisements. We don't have specifics, but that's generally what they allege. And they try to distinguish Sumum and Walker by saying those are different cases because either the fees are different there or the person who is creating the content is different. But those distinctions just don't hold up. And we go through those at pages 31 through 36 of our brief. But let me just focus on one, which is their attempt at distinction that, well, there weren't fees in the Walker case that go above the administration of the government program at issue. Well, that's just factually untrue. In Walker it was a license plate program where the opinion indicated that Texas made millions of dollars off the program well above mere administrative costs. And the majority opinion said the existence of government profit is insufficient to kick it out of the government speech analysis and trigger forum analysis. So the fact that there are fees that are paid by the private parties whose materials the government adopts as part of its speech program doesn't kick it out of the government speech analysis. So even assuming, if this court were to decide that it's not government speech, it still should be the district court's decision should still be affirmed because the rest area brochure racks are non-public forums. So if it's government speech, there's no First Amendment scrutiny. And we believe that's how this case should be decided. But even if this court were to decide that it's not government speech, the brochure racks are clearly non-public forums. And I think this confusion, if you will, underlies a lot of the allegations that plaintiffs make in the complaint. They've repeatedly argued that rest areas and the brochure racks are public areas, they're public forums because they're public areas. And that's just not how the forum analysis works. The rest areas and brochure racks are not places that, by long tradition, have been opened up for public discourse and expressive activity. They're not parks or sidewalks or public streets. They're not the Virginia Beach Boardwalk. They seem to me very analogous to parks. People, they are open to the public, and the public is, in fact, encouraged to avail themselves of its amenities. Parks are in a different category, the Supreme Court has said. You all have picnic tables. I'm sorry, Ron? You have picnic tables around and things like that. Yes, there are. Assume the contents of the vending machines. It's a part of what makes them attractive to the traveling public. It's why it's a mecca for tourists. That may be correct, and that's why it's a perfect place for the government to convey its message of tourism, travel-related activities. Your point is limited to the fact they're not places for, traditional places for expressive conduct. That's right. They're not for time immemorial been opened up for expressive activity the way that sidewalks and streets and parks, and the Supreme Court has recognized those and basically, in fact, sort of closed off any further kinds of forums like that. Is this a summary judgment? What is the context in which we're trying to wrestle with these issues? This is dismissed on a 12B6. There was a complaint filed, and the district court- I'm just asking whether some of these questions aren't more fact-specific. Well, as to government speech, we don't think so, because the first factor involving whether or not the state has used the speech to convey a government message, we think that's clear from the face of the complaint. They acknowledge that it historically existed for dissemination of information. Although I thought Sunun was decided at the summary judgment level. Is that not correct? It may have been. I don't recall. If I had to guess, I'd say it was. But the first and third factors here, whether this is a government message, we think it is, and appellants seem to concede that in their complaint. And the third factor, whether the state exercises editorial control, again, that's conceded. That's the whole point of the suit. So that only leaves the second factor, whether the tourism promotion program is closely identified in the public mind with Virginia. And I don't know that this is something that lends itself to discovery. I don't think there's going to be an expert secured to take a public survey and enter that into evidence. And, in fact, when the Supreme Court discussed this factor in Sumim and Walker, it didn't rely on any evidence that had been generated below. It referred to actually in Sumim, it simply said, the public will naturally identify the materials with the government unit that owns the land. And that was sufficient. So we think the court could decide to allow it to go out on 12B-6, as the district court did. And I'll point out, too, that That's what you want us to do, isn't it? Yes. Yes, Your Honor. We ask you to do that. The judge said you think we could. Yes. And I think it would be totally proper for the court to do it. In fact, we are asking affirmatively that the court do that. You think Judge Dumas got it right? Correct. Is there any aspect of your position that differs from Judge Dumas' treatment of the subject? There's not one coming to mind, Your Honor. We think that he got it right on. He didn't cross appeal on anything. That's correct. That's correct. So we think for those reasons, the fact that there's no standing, that it's clearly government speech for the reasons identified, and that even if it's not government speech, it's a non-public forum where the government is entitled to make content-neutral restrictions, we think that this court should affirm the district court. Thank you. Thank you, Mr. Cox. Mr. Martingale? Thank you. I'd like to go right to the government speech issue, if I may. And here's the problem we have with it. There is no evidence, and there's nothing in the record, to establish that historically the history of these rest areas is as has been described by the opposition. And I would point out that the two administrative regulations that we've pointed at, one having to do with the content that's allowed or not allowed at waysides and rest areas, and the other one having to do with news racks being allowed in the right of way, both of them are clearly designed to restrict other people's speech, not the speech of the government. And secondly, both were cited by the Virginia Department of Transportation in its very first promulgation of the restrictions, and that's found at Joint Appendix 197. Clearly, those regulations don't restrict the government itself. Those restrictions are aimed at other people. If they're aimed at other people, then how can the government seriously contend that this is about government speech? It's not. It's a recognition. But that's exactly what happened in Suman, and the district court said it was perfectly reasonable that one would naturally associate the structures in the park with a government message, even though the government didn't actually produce the structure. And Suman, by the way, procedurally had to do with an injunction request and then a reversal by the circuit and then a return again by the Supreme Court. So it wasn't decided on 12B6, and we think the court jumped the gun here. But to answer your particular question, it's so hard to know how to treat that case in the context of this case because what happened there is you're talking about permanent additions to the park that are messages that will look obviously like they are pronouncements of the government. It's on public property. It's a permanent addition. And so it will look like it's government speech. Here we don't have that. There is nothing in the record that actually defies common sense to believe that the traveling public is going to come in and pick up something for Kings Mill or Williamsburg or Busch Gardens or any other place in Virginia and think that that's actually a government message. These are advertisements for private people and entities. Sometimes they're advertisements for the government, and it's a mix. Can they collectively be a government message, though? That's what I'm wondering, even though reduced to their individual component parts they are. I would say that it would fall under perhaps the perception among the traveling public that the Commonwealth of Virginia is open for business and promotes business, but that doesn't mean that the individual ads are part of a government message. I thought the big slogan was Virginia is for lovers. And I've also heard some politicians since then say it's open for business as well. I think, Your Honor, that the point is that there is no evidence in the record currently indicating that anybody in the traveling public would reasonably and automatically assume that all of these messages are government messages, and we know that they have disclaimed that these are government-endorsed sponsorships or messages in all of the documents that we put in the record. What sort of evidence would you, assuming that it's not 12v6 and it goes forward, what evidence would one look for on the issue of whether or not it's government speech? You could have expert testimony. You could have General Assembly documents. You could have internal documents from the Virginia Tourism Commission. You could have a survey. You could have individuals testify. It could look like any number of different things. But I think that in some and in the Texas case, both of them were so obvious. Permanent monuments in a park or a license plate that is like a government ID slapped on the back of a vehicle, those are obviously different than news racks and that sort of thing. Did you ask for discovery here? I'm trying to recall if we served discovery with the complaint in state court. I do not recall what happened. What I do recall specifically is that it was met with the demer in state court, subsequently removed to federal court, immediately met with a 12v6 motion. We went right into the briefing, and the rest flowed from there. So we continue to say in argument in both writing and verbally that we believe that we were entitled to prove all of our factual allegations and that the court shouldn't cut us off in our ability to do so. One final thing I wanted to point out on this standing, I mentioned just briefly a second ago, is that the government specifically disclaims ownership of these messages or the right to affiliate it with these messages. You can find that at Joint Appendix 199 and 206, and VDOT distinguishes between commercial speech and government information in the document at page 199. They have themselves said there is a difference between commercial speech and government information, but yet for this purpose they want to blur them together. What about the license plate example that you had, Mr. Martingale? You know, Texas, I think the record showed, didn't it, that you could have out-of-state schools, universities on your license plate, and still the court said that's government speech. I mean, why is Duke University government speech in a license plate issued by the state of Texas? You see what I'm saying? The Supreme Court seems to be suggesting that government speech is a larger concept than just looking at the individual thing in front of you. I agree, and I see that I'm out of time. If I may attempt to answer that. You can go right ahead. As long as you get questions, you can answer them. Thank you. I see that as a complicated part of that case. It's difficult, and I think the dissent points that out as well. The only thing that I can figure out there is that it is a general message that the government approves of higher education and things like that. So what the government does is it says, look, if we approve of the message that you are asserting, then we will allow that to be a part of our government ID that we put on your car. But we retain the right to decide if it's a positive message that the government approves of, and they have presumably standards associated with that. Here we are not talking about the same thing. No one and nothing in the record even suggests that the traveling public would think that all of this information that is disseminated is sponsored by the government, and, in fact, the government has expressly disclaimed it. It prohibits you from putting out any message that states or even implies that it's a government-sponsored message. So they can't have it both ways. It either is or it is not, and 12b-6 was the wrong time to resolve that conflict. Thank you so much for your time today. Thank you, Mr. Martindale. We'll come down in Greek Council and adjourn court until tomorrow morning at 930. This honorable court stands adjourned until tomorrow morning. God save the United States and this honorable court.
judges: Robert B. King, Allyson K. Duncan, Barbara Milano Keenan